UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRENT EVERETT RUSS,<br>Defendant. | NO: 13-CR-0154-TOR<br><br>ORDER RE DEFENDANT'S MOTIONS TO DISMISS |

BEFORE THE COURT are Defendant's Motion to Dismiss (ECF No. 74) and Motions to Dismiss Based on the First Amendment (ECF Nos. 75 and 99).[1]

[1] Defendant filed a second motion to dismiss based on the First Amendment on the afternoon of January 9, 2014, after the Government filed a superseding indictment on January 7, 2013. The Government objected to hearing this motion January 10, 2014, and asked for time to respond. ECF No. 102. It has now responded. ECF No. 108.

This matter was heard at the pretrial conference January 10, 2013. Rudolph J. Verschoor appeared on behalf of the Government. Andrea K. George and Amy H. Rubin appeared on behalf of Defendant. The Court has reviewed the briefing and the record and files herein, and is fully informed.

DISCUSSION

Federal Rule of Criminal Procedure 12 provides in part that

> The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling. The court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court must state its essential findings on the record.

Fed. R. Crim P. 12. The rule allows a defendant to assert a defense in a pretrial motion if the merits of the defense can be determined "without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). However, if the pretrial motion raises factual questions associated with the validity of the defense, the district court cannot make those determinations. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). Doing so would "invade the province of the ultimate finder of fact." *Id.* (quoting *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976)).

1. <u>Motion to Dismiss for Lack of Jurisdiction (ECF No. 74)</u>

Defendant Russ first moves to dismiss the indictment against him on grounds that the Government cannot meet the elements of the charge as a matter of law because the acts set forth in the indictment do not meet the statute's

requirement. ECF No. 74 at 1. He argues that the Government confuses the term "tribal jurisdiction" within the statute as meaning "Indian country." ECF No. 74 at 2. Defendant contends that "Indian country" refers to a physical location as defined in 18 U.S.C. § 1151, meaning all land within the limits of an Indian reservation under the jurisdiction of the United States Government, dependent Indian communities, or Indian allotments. *Id*. at 4. In contrast, Defendant argues, "tribal jurisdiction" is the legal authority over persons, property and events in Indian country. *Id*.

The Government counters that this is not an Indian Country case; as such, the reference to "tribal jurisdiction" in the stalking statute is not a jurisdictional requirement but describes the location of the victim and defendant. ECF no. 87 at 2-3. The Government further argues that Defendant was not charged with a crime under the Major Crimes Act nor the General Crimes Act, in which the Government must prove the victim is an Indian; instead, the statute in question is a generally applicable statute and can be prosecuted wherever the offense occurred as long as the defendant and victim were in different, defined jurisdictions. *Id*. at 3. The Government argues that Congress used the term "tribal jurisdiction" interchangeably with "Indian Country." *Id*. at 7.

///

///

The federal anti-stalking statute in effect at the time of the offense[2] provides that

> [w]hoever…(2) with the intent—(A) to harass, or place under surveillance with intent to…harass, or intimidate, or cause substantial emotional distress **to a person in another State or tribal jurisdiction** within the special maritime and territorial jurisdiction of the United States…uses the mail, or any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of death of, or serious bodily injury to, any of the persons described in clauses (i) through (iii) of subparagraph (B)…shall be punished…

18 U.S.C. 2261A (emphasis added).

The Court can find no case law directly on point and accordingly looks only to the statutory language. "It is our duty 'to give effect, if possible, to every clause and word of a statute.' " *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125, 150 L. Ed. 2d 251 (2001) (quoting *United States v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955)). "[A] statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 36, 112 S. Ct. 1011, 1015, 117 L. Ed. 2d 181 (1992).

---

[2] Defendant was charged under the statute in effect at the time of the offense; a new version of the stalking statute went into effect October 1, 2013, which eliminated the requirement that the perpetrator and victim be in different jurisdictions.

The Court acknowledges that the statute is not a model of clarity. And Defendant is correct in stating that "tribal jurisdiction" and "Indian country" generally do not mean the same thing. "Tribal jurisdiction" typically refers to an Indian tribe's power to exercise jurisdiction. See Cohen's Handbook of Federal Indian Law § 9.04. "Indian country" is loosely defined as the "country within which Indian laws and customs and federal laws relating to Indians are generally applicable." Cohen's Handbook of Federal Indian Law§ 3.04. However the plain language of the statue reveals that the term "tribal jurisdiction" in the context of the statutory passage means a location. The previous subsection uses the phrase "Indian country" when describing the locational requirements for the offense. *See* 18 U.S.C. §2261A(1) ("travels in interstate or foreign commerce or within the special maritime and territorial jurisdiction of the United States, **or enters or leaves Indian country** or within the special maritime and territorial jurisdiction of the United States…" (emphasis added)). Thus, the chapter contemplates "Indian country" as a location. The next subsection uses "tribal jurisdiction" in the following ways: "to a person in another State or **tribal jurisdiction** or within the special maritime and territorial jurisdiction of the United States …" and "to place a person in another State or **tribal jurisdiction**, or within the special maritime and territorial jurisdiction of the United States…." 18 U.S.C. § 2261A(2)(A) and (B). The word "in" indicates that the use of the phrase "tribal jurisdiction" refers to a

location. "In" modifies both "State" and "tribal jurisdiction," and as such it indicates that the statute refers to a person in another state (a location) and in tribal jurisdiction (a location).

Accordingly, Defendant's motion to dismiss for jurisdictional reasons is denied.

2. Motions to Dismiss Based on the First Amendment (ECF No. 75 and 99)

Defendant argues that the indictment should be dismissed because it violates the First Amendment as applied to him. ECF No. 75 at 1. Defendant's first motion to dismiss based on the First Amendment (ECF No. 75) argues that the indictment should be dismissed because the federal stalking statute, 18 U.S.C. 2261A(2)(A), violates the First Amendment as applied to Defendant. The new charges in the Superseding Indictment allege that Defendant mailed threatening communications in violation of 18 U.S.C. 876(d) with intent to extort from L.M. money and other things of value. Defendant's second motion to dismiss based on the First Amendment (ECF No. 99) argues that the Superseding Indictment filed on January 7, 2014, be dismissed because the extortion statute under which Defendant is charged, 18 U.S.C. § 876(d), is unconstitutional as applied to Defendant.

///

///

///

**a. Whether the Federal Stalking Statute Violates the First Amendment As Applied to Defendant**

Defendant argues that the speech forming the basis for the stalking charges is protected by the First Amendment, and as such the indictment violates the first Amendment as applied to Defendant. ECF No. 75. The Government contends that Defendant's letters, while speech, are integral to his stalking conduct, which is a crime and not protected by the First Amendment. ECF No. 100 at 7.

The federal stalking statute provides in part

> Whoever…with the intent—(A) to…harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction…uses the mail…or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person…shall be punished….

18 U.S.C. 2261A.

The Court first considers what forms the basis for the alleged constitutional violation, and whether it is speech within the meaning of the First Amendment. First Amendment protections apply to speech and another expressive or symbolic expression or conduct. Here, the parties disagree about the scope of the "speech" identified as forming the basis for the statutory violation. Defendant states that the acts that constitute the "bulk of the §2261(2)(A) offense" include leaving a package at L.M.'s doorstep containing a letter, leaving a message on L.M.'s

husband's cell phone, and sending a letter to L.M. at the tribal office where she was employed. ECF No. 75 at 2. The Government argues that it is Defendant's conduct, not just his speech, that forms the focus of the prosecution. ECF No. 100 at 5. The Government contends that the following acts collectively make up the stalking behavior forming the basis of the offense charged: (a) L.M.'s report that Defendant was watching her in her yard; (b) L.M.'s report of a conversation with Defendant in which Defendant indicated that he knew when she left and when she was home; (c) a pamphlet Defendant left in L.M.'s mailbox describing Azrael and Uriel; (d) a package containing a letter on L.M.'s porch, left by Defendant, identifying L.M. as Uriel, Archangel of Justice, and with a return address of Azrael, when subsequent evidence found links Russ to Azrael; (e) a cell phone message from Defendant asking about the package; (f) Defendant's visit to L.M. and her husband's house asking about the package and letter; (g) a letter containing two civil complaints to L.M., alleging defamation against L.M. for reporting Defendant to Spokane Mental Health, threatening that failure to apologize would result in the filing of the two lawsuits, and threatening that Russ would "take everything you have, everything you ever had, and everything you ever will have through the courts"; (h) an identical letter with the same address sent to L.M.'s former home address; (i) a voice message from Defendant inquiring whether L.M. and her husband had received the letter. ECF No. 100. Defendant's counsel

asserted during the pretrial conference that Defendant and the Government do not dispute what occurred, only whether what occurred constituted a violation of the statute.

The Court next considers whether the type of speech in question falls under the protection of the First Amendment. While the First Amendment generally prohibits the Government from restricting speech based on its message or viewpoint, *Ashcroft v. ACLU*, 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002), the First Amendment's free-speech protections are not absolute, *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). The Government may permissibly restrict speech on the basis of content in certain narrowly drawn categories, including obscenity, defamation, fraud, incitement, and speech incident to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 1584, 176 L.Ed.2d 435 (2010) (citing *Chaplinksy*, 315 U.S. at 571-72). These categories of unprotected speech do not require case-by-case balancing because the harms they impose “so overwhelmingly outweigh[ ]” any First Amendment concerns that the “balance of competing interests is clearly struck.” *New York v. Ferber*, 458 U.S. 747, 763–64, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982).

Defendant provides a short list of speech excepted from First Amendment protection, arguing that the Government’s indictment is directed at protected

speech that is not exempted from protection by any of the recognized areas, citing the five types of unprotected speech listed in *Stevens*, noted above. ECF No. 99 at 2-3. The Court notes that Defendant's list of unprotected speech is not exhaustive. For example, in addition to the list Defendant includes in his motion to dismiss, the First Amendment also permits a State to ban a "true threat." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 1547-48, 155 L. Ed. 2d 535 (2003); accord, *R.A.V. v. City of St. Paul*, 505 U.S. at 388, 112 S.Ct. 2538 (1992) ("[T]hreats of violence are outside the First Amendment"); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 774, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); *Schenck v. Pro-Choice Network of Western N. Y.*, 519 U.S. 357, 373, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359-60, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535 (2003) (citing *Watts v. United States*, 394 U.S. at 708, 89 S.Ct. 1399 (1969) ("political hyberbole" is not a true threat); *R.A.V. v. City of St. Paul*, 505 U.S. at 388, 112 S.Ct. 2538). The speaker need not actually intend to carry out the threat. *Id*. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Id.*


The Government argues that the speech in question is integral to the criminal conduct, and is thus unprotected, citing *Gibony v. Empire Storage & Ice Co*., 336 U.S. 490, 498 (1949) ("speech or writing used as an integral part of conduct in violation of a valid criminal statute" is not protected); and *United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) ("there will be some instances when speech is so close in time and substance to ultimate criminal conduct that no free speech defense is appropriate").

Defendant cites *Boos v. Barry*, 485 U.S. 312 (1988), for the proposition that the Supreme Court has consistently classified outrageous speech as protected where that speech touches on matters of religious concern. ECF No. 75 at 4. However, the Supreme Court found the statute at issue in *Boos* to violate the First Amendment because it was a content-based restriction on political speech in a public forum which was not narrowly tailored to serve a compelling interest. The statute at issue made it unlawful to display signs within 500 feet of a foreign embassy that tends to bring the foreign government into "public odium" or "public disrepute." The statute, then, on its face drew a content-based distinction (speech criticizing foreign governments). The federal stalking statute, by contrast, criminalizes the use of the mail or computers to harass, etc., a victim. 18 U.S.C. 2261A. It therefore does not facially proscribe protected speech, and is in this way dissimilar to *Boos*.

If the speech is unprotected, the inquiry ends and no First Amendment claim attaches. If the speech is protected under the First Amendment—in other words, if it does not fall into one of the narrow exceptions—the next question is if the law can survive heightened scrutiny. A regulation that has an incidental effect on expressive conduct is constitutional as long as it withstands intermediate scrutiny. *Doe v. Reed*, 586 F.3d 671, 678 (2009) (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). A governmental regulation satisfies this standard if (1) "it is within the constitutional power of the Government"; (2) "it furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; (3) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id*. at 377.

The Government does not directly argue that the law survives this level of scrutiny, though it cites *O'Brien*. *O'Brien* concerns burning of a draft card in protest of the Vietnam War, and a law prohibiting the mutilation of draft cards. The district court rejected the defendant's argument that the law was enacted to

abridge free speech and therefore offended the First Amendment's protections because his burning of the draft card was protected "symbolic speech." On appeal, defendant's conviction was reversed, and on review by the Supreme Court, his conviction was reinstated. The Supreme Court noted that defendant was willfully frustrating government interest when he burned his draft card, and it was for "this noncommunicative impact of his conduct, and for nothing else, he was convicted." *O'Brien*, 391 U.S. at 382 ("The case at bar is therefore unlike one where the alleged governmental interest in regulating conduct arises in some measure because the communication allegedly integral to the conduct itself is thought to be harmful."). Thus, *O'Brien* may be distinguishable from the instant case, because it concerned symbolic speech.

The Government also cites *United States v. Shepard*, 2012 WL 113027 (D. Az. 2012) (unpublished district court opinion). In *Shepard*, the district court denied a motion to dismiss an indictment on grounds that the interstate stalking statute's application to defendant violated the First Amendment. The *Shepard* court examined whether the federal stalking statute passed intermediate scrutiny under the First Amendment. The *Shepard* court, applying *O'Brien*, found that the government had

> a strong and legitimate interest in preventing the harassment of individuals and that the governmental interest is unrelated to the suppression of free expression. Furthermore, the Court finds that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the

> furtherance of that interest. Indeed, any incidental restriction on Shepard's First Amendment freedoms does not violate the First Amendment because the speech is integral to the alleged criminal conduct. *United States v. Stevens*, 559 U.S. 460, ——, 130 S.Ct. 1577, 1584, 176 L.Ed.2d 435 (2010) (First Amendment does not protect "speech integral to criminal conduct").

*Shepard*, 2012 WL 113027.

Though the Government argues that the statute is not overbroad, Defendant does not seem to be challenging it on overbreadth grounds, so the Court does not further address that argument here.

Here, Defendant's claim that the statute as applied offends the First Amendment requires the Court to examine facts that go to the validity of the charges and the applicability of the statute itself, and thus invades the province of the jury in violation of Rule 12. An analysis of whether the statements Defendant made were "true threats," for example, requires the Court to consider the Defendant's intent, one of the statutory requirements. Accordingly, the Court denies the motion with leave to renew at trial.

**b. Whether the Federal Extortion Statute Violates the First Amendment As Applied to Defendant**

The Superseding Indictment alleges that Defendant mailed threatening communications in violation 18 U.S.C. 876(d), "knowingly and with the intent to extort from LM money and other things of value." ECF No. 83. In Defendant's Second Motion to Dismiss Based on the First Amendment (ECF No. 99),

Defendant moves to dismiss the Superseding Indictment on the basis that 18 U.S.C. § 876(d) violates the First Amendment as applied to him. ECF No. 99 at 1.

The extortion statute provides in part

> Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 876(d). The Ninth Circuit addressed the constitutionality of the statute with respect to a general challenge to its constitutionality under the First Amendment:

> Because the statute in the present case is limited to extortionate threats, it does not regulate speech relating to social or political conflict, where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas. The "intent to extort" requirement of section 876 guarantees that the statute reaches only extortionate speech, which is undoubtedly within the government's power to prohibit.

*United States v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1988) (internal citations omitted).

Defendant argues that, while extortionate speech is unprotected by the First Amendment, the speech in question here is a demand letter and attached lawsuits, in which Russ requests an apology from L.M. and threatens to file lawsuits against her for personal injury resulting from a dog bite and for defamation arising from

L.M. reporting him for mental health issues. ECF No. 99 at 5. Defendant argues that the letter requesting an apology and the lawsuits are not extortionate speech and are protected by the First Amendment's right to petition the government for redress of grievances. ECF No. 99 at 5-6.

Among other rights, the First Amendment protects "the right of the people ... to petition the Government for a redress of grievances." U.S. Const., Amdt. 1. "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (holding that the Petition Clause does not provide absolute immunity from damages for libel). It is unclear to the Court, then, how the fact that the speech in question would receive greater protection by an invocation of the Petition Clause than free speech principles. Nor is it clear that any government action has interfered with Defendant's right to petition the government; Defendant did not file the lawsuits in question, and is not facing criminal prosecution for doing so.

However, the Court need not extensively analyze this question; because questions of fact remain, this issue is inappropriate for decision before trial. Defendant appears to argue that the only threat contained in the letter and accompanying lawsuit is to pursue money damages in court. He states that if sending demand letters could be criminalized, "[e]very lawyer trying to negotiate a

settlement short of a lawsuit would be subject to potential mailing threating communications charges if this type of speech is excluded from protected under the first Amendment." ECF No. 99 at 6. Generally, a threat to file a lawsuit does not constitute extortion. *See United States v. Pendergraft*, 297 F.3d 1198, 1204 (11th Cir.2002); *First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir. 1988); *I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265, 267–68 (8th Cir. 1984). Here, however, the behavior in question is not undisputedly simply a demand letter. The letter in question states in part

> My patience will run out if these accusations continue however, and if you choose to continue pressing these libelous claims, you can guarantee that I will take everything you have, everything you ever had, and everything you ever will have through the courts. I will make you destitute, that is a promise.

ECF No. 75-2, Exhibit 2. The letter notes that the lawsuits claim $100,000 each, but threatens to take "everything you have, everything you ever had, and everything you ever will have through the courts" and to "make you destitute." Thus, there is ambiguity as to how Defendant intended to accomplish the threats—through the lawsuits or another means. In other words, the letter presents more ambiguity than Defendant claims, and the Court cannot make determinations of factual questions associated with the validity of the defense. Accordingly, Defendant's motion is denied with leave to renew at trial.

//

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (ECF Nos. 74) is **DENIED**.

2. Defendant's Motions to Dismiss Based on the First Amendment (ECF Nos. 75 and 99) are **DENIED** with leave to renew at trial.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** January 13, 2013.



THOMAS O. RICE
United States District Judge